**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| SHELLY R. P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 22-CV-373-MTS |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Shelly R. P. requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision denying benefits.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.  Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.

At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work.

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account her age, education, work experience, and RFC – can perform.  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.  *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id*. at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  A court's review is limited to two inquiries:  first, whether the correct legal standards were applied; and second, whether the decision was supported by substantial evidence.  *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citation omitted).  Substantial evidence is

"more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). A court, however, may not re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Even if a court might have reached a different conclusion, the Commissioner's decision will stand if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## Background and Procedural History

On November 12, 2020, Plaintiff filed an application for Title II disability insurance benefits (42 U.S.C. § 401, *et seq.*) under the Social Security Act. (R. 12, 212-13). She alleged an inability to work beginning on March 27, 2020, due to limitations resulting from degenerative disc disease, arthritis, injuries to the back, hip, and shoulder, and depression. (R. 12, 233). Plaintiff was fifty-five years old at the time of the ALJ's decision. (R. 25, 40, 212). She is a high school graduate and has past relevant work as a surgical technician. (R. 24, 40-41, 59, 234-35).

Plaintiff's application was denied both initially and upon reconsideration. (R. 120-23, 125-30). At Plaintiff's request, ALJ Mattie Harvin-Woode conducted an administrative hearing on January 6, 2022. The hearing was held by teleconference pursuant to COVID-19 procedures. (R. 12, 32-72, 131-32, 164-65). ALJ Harvin-Woode issued a decision on February 2, 2022, denying benefits and finding Plaintiff not disabled. (R. 12-26). Plaintiff sought review by the Appeals

Council, which was denied on June 21, 2022.  (R. 1-6).  As a result, the decision of the ALJ

represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

Following the five-step sequential process, the ALJ determined at step one that Plaintiff

had not engaged in substantial gainful activity since March 27, 2020, the alleged onset date.  (R.

14).  At step two, she found Plaintiff suffered from severe impairments of generalized

osteoarthritis, obesity, lumbar and cervical degenerative disc disease, bursitis of the right elbow,

lumbar spondylosis, chronic pain syndrome, sacrococcygeal disorders, and lumbar radiculopathy.

(R. 15).  The ALJ determined at step three that Plaintiff's impairments did not meet or equal a

listed impairment.  (R. 17-18).  Based upon her consideration of Plaintiff's subjective allegations,

the medical evidence, and the medical source opinion evidence, the ALJ concluded Plaintiff

retained "the [RFC] to perform light work as defined in 20 CFR 404.1567(b)" with the following

additional limitations:

> [S]he can occasionally stoop, kneel, crawl, crouch, and climb ramps and stairs; she
> can never climb ladders, ropes, or scaffolds.  She can occasionally reach overhead
> with the dominant right upper extremity; she has no limits with the non-dominant
> arm; she can frequently reach in all other directions with the right upper extremity;
> and she can frequently handle.  She must avoid hazards such as unprotected heights
> and large moving machinery.  She cannot operate motorized vehicles.  She needs
> the option to sit every 45 minutes for 1-5 minutes but could continue working while
> seated.

(R. 18).

At step four, the ALJ determined Plaintiff was unable to perform her past relevant work as

a surgical technician. (R. 24).  After consultation with a vocational expert ("VE"), she concluded

at step five that Plaintiff could perform the representative jobs of cashier II, document specialist,

and dealer account investigator, all of which she found existed in significant numbers in the

national economy.  (R. 25-26, 59-62).  As a result, the ALJ determined Plaintiff had not been under

4

a disability from March 27, 2020, through the date of the decision.  (R. 26).

## Errors Alleged for Review

Plaintiff raises one overarching allegation of error in her challenge to the Commissioner's denial of benefits on appeal – "[t]he ALJ's assigned RFC fails to comply with SSR 96-8p.  The ALJ failed to consider all of Claimant's severe and non-severe impairments and their limitations found in combination.  This results in a fatal Step Five error."  (Docket No. 17 at 4).  For purposes of clarity, the Court addresses Plaintiff's allegations based upon the ALJ's evaluation of Plaintiff's physical and mental limitations in the RFC.  Regarding physical limitations, Plaintiff challenges: (1) the ALJ's evaluation of certain medical opinions, and (2) the ALJ's analysis of Plaintiff's subjective symptoms.  (Docket No. 17 at 5-11).  Regarding her mental limitations, Plaintiff challenges the ALJ's consideration of her "mild" mental limitations in the RFC.  *Id*. at 11-15.

## The ALJ's RFC Determination

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (July 2, 1996).  The RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  *Id*. at *7.  The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*.  If there is a conflict between the RFC and a medical source opinion, the ALJ must "explain why the opinion was not adopted." *Id*.

### A.  Consideration of Plaintiff's Physical Impairments

#### 1.  Medical Opinion Evidence

Plaintiff contends the ALJ failed to properly evaluate medical opinions from Thomas Craven, M.D., James Rodgers, M.D., Frank Hackl, M.D., and Richard Ferguson, PA-C.  Medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c, 416.920c.  Under these rules, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the ALJ must "articulate" in the decision how persuasive she finds each medical source's opinion by considering a list of factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors include: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements.").  20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important factors are supportability and consistency, and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).[1]

The regulations explain that for supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical

---

[1]  Generally, the ALJ is not required to explain how the other factors were considered.  *Id.*  However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ must explain how she considered the other factors.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 1520c(c)(1), 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 1520c(c)(2), 416.920c(c)(2).

Plaintiff first challenges the ALJ's reliance on the opinion of Dr. Craven, an orthopedist who examined Plaintiff. She asserts Dr. Craven's opinion does not support the RFC determination because his evaluation was limited to only Plaintiff's cervical spine and his opinion is not consistent with Dr. Rodgers's opinion. The ALJ specifically considered Dr. Craven's opinion – that "claimant continue light duty and that maximum medical improvement and release to full duty is anticipated" – finding it "somewhat persuasive" and "generally consistent" with the record. (R. 23). The ALJ acknowledged Dr. Craven's opinion was provided for Plaintiff's workers' compensation claim, finding that "examinations by a specialist are helpful in providing insight into the claimant's functional abilities." *Id*. She concluded the opinion was "generally consistent with the evidence of record from the claimant's neurosurgeon, and generally supported by the summary and analysis of the evidence." *Id*.

A review of the record reveals that Plaintiff's arguments regarding Dr. Craven's opinion are without merit. In March and April of 2020, Dr. Craven examined Plaintiff for cervical and lumbar pain, and his examination included findings associated with both her cervical and lumbar spine. For example, during his two examinations of Plaintiff, Dr. Craven determined Plaintiff's Spurling Test, Hoffman's Sign, and Tinel Sign (all tests associated with her cervical spine) were negative. He also found Plaintiff's gait, coordination, balance, and posture were normal. Although Plaintiff's lumbar range of motion was limited by pain, she exhibited no such pain with motion of

her hips, no pain with straight leg raising, and she had normal leg strength and no lower extremity weakness.  (R. 19-21, 343-44, 346-47).

Moreover, the Court disagrees with Plaintiff's argument that it is "a misstatement of the record" that Dr. Craven's opinion is consistent with Dr. Rodgers's opinion.  (Docket No. 17 at 7).  Dr. Rodgers first examined Plaintiff in May of 2020.  Plaintiff complained her back pain "radiate[d] into her left hip and down her left leg to the knee[,]" and she suffered from pain when sitting.  (R. 19, 21, 380).  Dr. Rodgers noted Plaintiff had no radiation of pain from her neck and that her "[r]ange of motion [was] not particularly limited."  *Id.*  His examination findings included full strength in all muscle groups tested in the upper and lower extremities, normal sensory examination, "non-remarkable" range of motion in the shoulders, elbows, and wrists, no significant pain with seated straight leg raising, Plaintiff could heel-and-toe walk and had normal gait, and she had some pain with range of motion in her back.  Dr. Rodgers issued temporary restrictions for Plaintiff, which included no lifting or carrying over 15-20 pounds, no repetitive lifting over 15-20 pounds, no prolonged standing or walking, and no overhead activities.  He did not limit Plaintiff to a sit-down job only, but instead he wrote "sitting job ok."  (R. 19-21, 379-384, 400).

Plaintiff returned to Dr. Rodgers in June of 2020, reporting "constant low back pain, coccygeal pain, and left hip pain."  (R. 392).  He reviewed a current MRI of Plaintiff's lumbar spine and did not believe Plaintiff needed surgery.  He issued temporary restrictions for Plaintiff, which were identical to his previous restrictions.  (R. 19-21, 392-95, 396).  Although Dr. Rodgers's restrictions were more limiting than Dr. Craven's limit to light duty, there are consistencies between their examination findings.  The Court therefore finds no error in the ALJ's reliance on these consistencies in support of the RFC assessment.

Plaintiff also contends that several of Dr. Rodgers's findings do not support the ALJ's RFC assessment.  She argues that Dr. Rodgers limited her to a sedentary position and documented her difficulties with standing, which do not support the ALJ's limitation for a sit-stand option.  She further asserts that Dr. Rodgers's opinion was provided prior to a 2021 MRI, which she alleges shows her lumbar degenerative disc disease had worsened.  The ALJ considered Dr. Rodgers's opinion "that bending, stooping, and lifting, as well as sitting for prolonged periods will increase [Plaintiff's] pain" and that she was "limited to lifting 15-20 pounds with no prolonged standing or walking."  (R. 23).  She determined Dr. Rodgers's opinion was "somewhat persuasive" because "the record supports light exertion due to generally unremarkable physical examinations, conservative treatment, and more functional abilities than alleged."  *Id*.  She further noted Dr. Rodgers's findings were "generally consistent with the evidence of record from the claimant's orthopedic surgeon, and . . . supported by the summary and analysis of the evidence."  *Id*.

Upon review of the record, the Court finds no merit to Plaintiff's arguments regarding Dr. Rodgers's opinion.  Dr. Rodgers did not find that Plaintiff "was only capable of a 'sitting job.'" (Docket No. 17 at 8).  As previously noted, he determined a sitting job was "ok" for Plaintiff, but he did not limit her to only a sitting job.  (R. 395, 400).  Moreover, Dr. Rodgers mentioned Plaintiff reportedly stood on the ball of her left foot to take pressure off her left leg and that her back becomes "more achy" the longer she stands.  (R. 381, 385).  He limited Plaintiff to no prolonged standing or walking, which the ALJ considered in reaching the RFC assessment.  (R. 19-20).  Further, although Dr. Rodgers examined Plaintiff prior to her November of 2021 MRI, the record demonstrates the ALJ considered the MRI when assessing the RFC.  (R. 19-20).

Plaintiff next argues the ALJ erred when rejecting the treating source statement from her pain specialist, Dr. Hackl, wherein he concluded Plaintiff's "lumbar stenosis causes her severe

back pain and significant limitations in her ability to stand or sit for any length of time." (R. 23, 586).   The ALJ found Dr. Hackl's opinion "unpersuasive" because he did not specialize in orthopedics or neurosurgery, and his opinion was inconsistent with the evidence of record, including that Plaintiff's physicians with specialization did not make the same "correlation." (R. 21, 23-24, 586).   To the extent Dr. Hackl determined Plaintiff was "permanently disabled secondary to her spinal condition," the ALJ noted the opinion addressed "an issue reserved to the Commissioner," and she was not required to evaluate it under the regulations. (R. 24, 586).

The Court finds no error in the ALJ's evaluation of Dr. Hackl's opinion.   Treatment records from Dr. Hackl from September of 2021 show that Plaintiff reported "increased functionality" on her medication with no negative effects and "70-80% relief" from cervical epidural steroid injections. (R. 582).   Although her range of motion was reduced by pain in the left lower extremity, her range of motion in the right lower extremity was full and painless, her motor strength was normal, and she had no neurological deficits. (R. 20, 582-84).   Moreover, under the regulations, the ALJ was not required to provide any analysis of how she considered Dr. Hackl's opinion that Plaintiff was "permanently disabled secondary to her spinal condition."   *See* 20 C.F.R. § 404.1520b(c)(3)(i) (indicating statements from a medical source on issues "reserved to the Commissioner" are "inherently neither valuable nor persuasive" and stating that an ALJ is not required to provide "any analysis about how [she] considered such evidence . . . .").

Plaintiff further asserts that the ALJ failed to discuss the opinion of Mr. Ferguson, who examined Plaintiff in March of 2020.   Treatment records show that Plaintiff "[d]iscussed sitting duty, with no lifting of greater than 5 [pounds] with her supervisor[, who was] unable to accommodate [the restrictions]." (R. 334).   Contrary to Plaintiff's argument, the ALJ did discuss Mr. Ferguson's treatment records.   She determined the "return-to-work notes are unpersuasive"

because they are conclusory and include "no analysis or examination findings to support such an opinion." (R. 24). She found there is "no function-by-function analysis of . . . abilities and limitations" and the "findings are temporary in nature, which does not reflect [Plaintiff's] abilities and limitations on a regular and continuing basis." [2] *Id.* Thus, the ALJ properly considered Mr. Ferguson's opinion. *See*, *e.g.*, *Clapper v. Berryhill*, 2018 WL 2144610, at *6-7 (W.D. Okla. May 9, 2018) (affirming and finding the ALJ's reasoning "valid" where the ALJ discounted an opinion because the limitations were temporary).

Finally, Plaintiff makes a general argument that there is no opinion from a treating provider that Plaintiff can perform the assessed RFC, noting instead that the ALJ used her own "lay opinion" to reach the conclusion that Plaintiff "can stand for 45 minutes at a time." (Docket No. 17 at 10). Although an "ALJ may not substitute her own opinion for that of [Plaintiff's] doctor," *Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996), it is "the ALJ, not a physician, [who] is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). There is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). Here, the ALJ's decision demonstrates she did not substitute her own opinion over any physician's opinion, but she did consider the record evidence and determined Plaintiff's RFC.

### 2. Evaluation of Subjective Complaints

Within her arguments regarding the ALJ's analysis of the medical opinion evidence, Plaintiff challenges the ALJ's evaluation of her subjective symptoms, including pain. When

---

[2] The temporary nature of the opinion is also demonstrated by Mr. Ferguson's opinion from two days later, wherein he stated, "[w]ill bump up her lifting restrictions to 10 pounds, as she appears to be improving." (R. 336).

evaluating a claimant's symptoms, the ALJ uses a two-step process:

> First, [the ALJ] must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second, . . . [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]

SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017). As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. § 404.1529(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment other than medication for relief of pain or other symptoms; (vi) any other measures used by the claimant to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *Id*. at *7-8.

Deference must be given to an ALJ's evaluation of a claimant's pain or symptoms, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. An ALJ's findings, however, "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). "[S]o long as the ALJ 'sets forth the specific evidence [s]he relies on in evaluating the [consistency of the claimant's subjective complaints],' [s]he need not make a 'formalistic factor-by-factor recitation of the evidence.'" *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012), quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

As part of the evaluation of Plaintiff's subjective symptoms, the ALJ noted the two-step process set forth in SSR 16-3p and the requirements under 20 C.F.R. § 404.1529. (R. 18-19). Her evaluation included consideration of Plaintiff's subjective complaints on her function reports (R. 19, 245-52, 270-77), hearing testimony (R. 19, 34-58), and a third-party function report (R. 19,

253-60).  She also discussed in detail the medical evidence in the record.  (R. 19-22).  She determined Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" but Plaintiff's subjective statements were "not entirely consistent with the medical evidence and other evidence in the record[.]" (R. 19).  The ALJ then made several references to the evidence to demonstrate why Plaintiff's subjective allegations were not supported, including references to objective testing and examinations; the effectiveness of medication, including injections, on pain; reports of medication side effects; the conservative nature of treatment; and Plaintiff's ability to engage in certain activities.  (R. 20-22).

The Court finds the ALJ set forth the specific evidence she relied upon and then linked her evaluation of Plaintiff's symptoms to substantial evidence in the record.  Based on the record evidence, the Court cannot determine that the ALJ misread the medical evidence as a whole.  *See Casias*, 933 F.2d at 801.

**B.  Consideration of Plaintiff's Mental Impairments**

Plaintiff contends that even though the ALJ determined her anxiety and depression were non-severe impairments at step two, she was required to explain what limitations resulted from the impairments in the RFC assessment.  She argues the failure to do so demonstrates the ALJ relied on findings of non-severity to assess an RFC with no mental limitations.  Defendant counters that the ALJ considered Plaintiff's mental impairments in the RFC and issued a decision supported by the evidence.  (Docket No. 24 at 13).

At step two, in addition to certain physical impairments, the ALJ determined Plaintiff's "medically determinable mental impairments of major depressive disorder and unspecified anxiety disorder, considered singly and in combination, do not cause more than minimal limitation in the [Plaintiff's] ability to perform basic mental work activities and are therefore non-severe."  (R. 16).

13

She then considered the four areas of mental functioning, the "paragraph B criteria," and determined Plaintiff had no limitation in understanding, remembering, or applying information, but she had mild limitations in interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself.  (R. 16-17).  The ALJ determined Plaintiff's mental impairments were non-severe and made the following statements regarding the mental RFC:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment.  The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(R. 17).

In *Wells v. Colvin*, 727 F.3d 1061 (10th Cir. 2013), the Tenth Circuit determined that language similar to that used by the ALJ in this case was inadequate to support omitting mental impairments from the RFC assessment.  In *Wells*, the ALJ determined at step two that the claimant had mild restrictions in all four areas of functioning, and then "stated that [the] findings do not result in further limitations in work-related functions in the [RFC] assessment below." *Id*. at 1069; *see also Alvey v. Colvin*, 536 Fed. Appx. 792, 794 (10th Cir. Aug. 28, 2013) (finding a step-two statement similar to that in *Wells* was inadequate).  The court was concerned that such language indicated the ALJ "may have relied on his step-two findings to conclude that [the claimant] had no limitation based on her mental impairments[,]" and that such reliance was "inadequate under the regulations and the Commissioner's procedures." [3]  *Id*.  It explained that a "conclusion that the

---

[3]  In *Wells*, the court illustrated that the ALJ "could . . . find at step two that a medically determinable impairment posed no restriction on the claimant's work activities" and that "[s]uch a finding would obviate the need for further analysis at step four."  727 F.3d at 1065 n.3.  It pointed out that because the ALJ found "mild" restrictions in three of the functional areas, further analysis was required.  *Id*., citing 20 C.F.R. § 404.1520a(c)(4) (permitting the ALJ to find the degree of limitation in the functional areas as "none").

claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five." *Id*. at 1068-69. "[T]he ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*." *Id*. at 1065 (emphasis in original), citing 20 C.F.R. § 404.1545(a)(2) ("We will consider all of [a claimant's] medically determinable impairments . . . including [ ] medically determinable impairments that are not 'severe,' . . . when we assess [a claimant's RFC].").

The *Wells* court, however, determined that an inadequate step-two statement could be cured if the ALJ "satisfied [his] obligation at step four to provide a more detailed assessment of [the claimant's] ability to complete various job functions as part of determining [the] RFC." *Id*. at 1069. Although the ALJ's discussion in *Wells* was described as "far from systematic," the court noted it "may have been adequate to fulfill [the ALJ's] duty at step four to determine [the claimant's] mental RFC." *Id*. at 1065. The main requirement set forth by *Wells* for determining the adequacy of the ALJ's discussion was whether it was supported by substantial evidence. *Id.* at 1069.

Here, the ALJ assessed Plaintiff's RFC and did not include any mental functional limitations. Similar to *Wells*, however, the ALJ "separately discussed [Plaintiff's] mental impairments to some degree" at step four. *Id*. at 1069. Although Plaintiff acknowledges some discussion by the ALJ, she challenges the ALJ's failure to include mental limitations in the RFC, arguing the ALJ failed to properly consider the opinions of the reviewing and consulting psychologists and her subjective symptoms. (Docket No. 17 at 11-15).

The ALJ's step-four discussion included consideration of the medical opinions pursuant to 20 C.F.R. § 404.1520c, including the opinion of consulting psychologist, Denise LaGrand,

Psy.D. (R. 23). Plaintiff makes a general argument that the ALJ's discussion of Dr. LaGrand's opinion lacked detail. She also contends that Dr. LaGrand's findings of Plaintiff's recall on memory tasks and her "low average or above" scores for vocabulary, information, and intelligence support limitations in understanding, remembering, or applying information, and that Dr. LaGrand's finding that Plaintiff has "mild" limitations in several work-related social areas supports limitations in the RFC for social interaction. She further asserts Dr. LaGrand's examination supports limitations in adapting and managing herself. The ALJ noted Dr. LaGrand's opinion that Plaintiff experienced "mild mental health symptoms" and that while Plaintiff "report[ed] some mental/emotional symptoms, the symptoms do not appear to significantly affect her ability to work" and found them persuasive. (R. 23). She found the opinion was consistent with the record evidence and supported by Dr. LaGrand's summary and analysis of the evidence, "which show[ed] normal mental status examinations, mild symptoms with conservative treatment, and more functional abilities than alleged." (R. 16, 23).

Although the ALJ did not discuss Dr. LaGrand's examination findings in detail, the Court finds no error in the ALJ's analysis of Dr. LaGrand's opinion. Dr. LaGrand's report specifically addresses Plaintiff's mental impairments and supports the ALJ's decision not to include mental functional limitations in the RFC. Dr. LaGrand examined Plaintiff on March 17, 2021. Notably, her report provides that Plaintiff complained that pain and physical problems prevented her from working. (R. 513). Plaintiff experienced depression for the entirety of her adult life, but it had remained "fairly constant and d[id] not prevent her from working." (R. 514). She had not received any mental health services, nor had she had any inpatient admissions related to her mental health. *Id*. Plaintiff took medication for her anxiety and depression, which she reported was "somewhat helpful[,] but she still experience[d] depression and anxiety[.]" (R. 515).

Plaintiff lived alone without assistance, could manage her own finances and pay bills, and could "adequately perform personal grooming, dressing, and bathing slowly with modification." (R. 514).   Dr. LaGrand described Plaintiff's dress as "casual/appropriate" and indicated her hygiene/grooming was "adequate." (R. 513).  Plaintiff reported she interacted with her family, but she could become "anxious and overwhelmed in stores."  (R. 514).   Although Dr. LaGrand's mental status examination of Plaintiff included findings of some difficulty on immediate and delayed recall and "low average or above" scores for vocabulary, information, and intelligence, she ultimately concluded that mental/emotional symptoms did not "significantly affect [Plaintiff's] ability to work." (R. 516-17).  Dr. LaGrand listed several work-related activities in which Plaintiff had "no/mild impairment."  (R. 517).

Regarding the opinions of the reviewing psychologists, Drs. Lindsay and Scott, Plaintiff contends they assessed her with "mild" limitations in all the mental functional areas, which supports including mental limitations in the RFC.  The ALJ discussed the opinions in the decision, finding them persuasive because the reviewing psychologists "conducted a comprehensive records review, they formulated their conclusions based on their expertise, the findings are consistent with the evidence of record, and the findings are supported by the consultant['s] summary and analysis of the evidence, which show normal mental status examinations, mild symptoms with conservative treatment, and more functional abilities than alleged." (R. 23).

The Court finds the ALJ's analysis of the reviewing psychologists' opinions was adequate and supports the ALJ's decision not to include mental functional limitations in the RFC.  In reaching their conclusions, Drs. Lindsay and Scott considered the evidence, including Plaintiff's subjective symptoms related to her depression and anxiety.  (R. 81-83, 100-03).  Dr. Lindsay's analysis of the evidence included the explanation that "[Plaintiff's] [c]onditions impose only mild

limitations in global functioning" that are "[n]on-severe[,]" but also noted that "Plaintiff has been on medication for . . . a number of years and is doing well." (R. 82). On reconsideration, Dr. Scott considered much of the same evidence as Dr. Lindsay, noting that Plaintiff reported no changes or new mental health conditions. He reached the same assessment of "mild" limitations and a "non-severe" impairment. (R. 100-03). Neither of the reviewing psychologists included mental functional limitations in an RFC assessment. (R. 79-83, 99-103).

The ALJ also addressed Plaintiff's subjective mental complaints in the step-four discussion. Plaintiff claims the ALJ failed to properly consider her inability to manage herself and adapt, memory and social issues, and the effectiveness of medication. The ALJ discussed Plaintiff's complaints, including that "her impairments affect her ability to . . . remember, concentrate, and get along with others," and determined these complaints and others "[were] not entirely consistent with the medical evidence and other evidence in the record[.]" (R. 16-17, 19). She discussed Plaintiff's reports of "drowsiness" from her medications (R. 21) and her daily activities, including her interactions with family and her management of finances, specifically citing Plaintiff's reports to Dr. LaGrand, and Plaintiff's own function reports. (R. 16, 22).

Although the ALJ did not specifically reference all of the evidence cited by Plaintiff in her brief, a review of the record shows the ALJ did not misread the evidence as a whole when considering Plaintiff's subjective mental complaints. *See Casias*, 933 F.2d at 801. Moreover, the cited evidence does not support the inclusion of work-related mental limitations in the RFC. For example, although the Plaintiff did report problems with memory and social interactions on her function reports, she also reported to Dr. LaGrand that she could manage her own finances, including paying her bills on time and managing her bank account. (R. 22, 514). She reported to

Dr. LaGrand that she sometimes had difficulty getting along with others, but she interacted with family and used social media to keep in touch with family and friends.  (R. 514-15).

Plaintiff also references treatment notes from January and July of 2019 and from November of 2021, regarding the effectiveness of medication.  However, the only explicit reference to her medication not working was in January of 2019, prior to the alleged onset of disability in March of 2020.  (R. 419-20, 455, 515, 564).  Regarding Plaintiff's ability to care for herself, the ALJ discussed Plaintiff's daily activities as reported to Dr. LaGrand.  (R. 21).  Plaintiff's citations merely provide that sometimes she does not feel like getting dressed or bathing and her daughter reminds her to "shower, fix my hair."  (R. 246-47, 272).  When explaining how her conditions affected her abilities as to personal care, Plaintiff listed pain from her physical complaints as the reason she had difficulty with activities.  (R. 271).

Further, Plaintiff's hearing testimony supports the ALJ's findings as to Plaintiff's mental complaints.   When asked about her cognitive abilities to perform her prior work, Plaintiff responded she could not "physically do the labor." (R. 47).  Regarding hygiene and taking care of personal needs, Plaintiff's daughter and grandson help her when she needs it.  She reportedly could do household chores, but she needed help carrying the dog food and pop.  Plaintiff takes medication prescribed by her primary care physician for anxiety and depression, but she has not seen a mental health professional.  (R. 56).  Plaintiff was taking medication for her mental health on an as needed basis before she stopped working.  (R. 57).   She does not like to leave her house, because she is fearful that "I'm going to get stuck and have to walk."  (R. 56-57).

In conclusion, although the ALJ's findings as to Plaintiff's mental impairments could have been more extensive at step four, this Court finds that any lack of "a more particularized assessment of mental functions at step four was harmless error[,] as [t]here is no substantial

evidence that would allow a reasonable administrative factfinder to include mental limitations in [the] RFC." *Alvey*, 536 Fed. Appx. at 795, citing *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). Moreover, Plaintiff has pointed to no medical evidence or medical opinion evidence that shows the combined effect of her impairments would result in greater functional limitations than those the ALJ included in the RFC. *See Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988) ("Eggleston argues that the ALJ did not consider the combined effects of his impairments. The ALJ's opinion addresses Eggleston's various impairments, and we find nothing to suggest they were not properly considered."). Lastly, because the ALJ presented a hypothetical question to the VE which included the limitations she adopted in the RFC (R. 59-62), there can be no step-five error. *See Qualls*, 206 F.3d at 1373 (finding an ALJ's hypothetical questioning of the VE provided an appropriate basis for the denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment."), citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993).

## Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

IT IS SO ORDERED this 17th day of October, 2023.

_____
MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRCT COURT